UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HAROLD HAYES ALLEN | ) | Case No. 04-13629-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| ROBERT O. TYLER, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 05-1420 |
| | ) | |
| CENTER FOR ADVANCED | ) | |
| ORTHOPEDIC SURGERY AND | ) | |
| PAIN MANAGEMENT, PLC | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This is an action by a chapter 7 trustee to collect amounts due on 6 checks in the aggregate amount of $3,895.74 drawn by Center for Advanced Orthopedic Surgery and Pain Management, PLC ("the Center") — which subsequently stopped payment on them — that were payable to the debtor. Trial was held without a jury on December 9, 2005, on stipulated facts supplemented by brief testimony. Upon consideration of the facts and the applicable law, the court concludes that the trustee is entitled to judgment for the amount of the dishonored checks. This opinion constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

1

<u>Procedural Background and Findings of Fact</u>

Harold Hayes Allen filed a voluntary petition in this court on August 27, 2004, for

relief under chapter 7 of the Bankruptcy Code.  Robert O. Tyler was appointed as trustee.

Among the assets of the debtor listed on his schedules were promissory notes payable to him

by Dr. Randolph B. Cook and Dr. Vaughn A. Frigon, as well as several causes of action that

had been asserted in pending state court litigation.  On March 4, 2005, the trustee gave

notice of his intent to sell the two promissory notes and the causes of action to the debtor for

$37,000 payable in installments over a period of one year.  Relevant to the present

controversy, the Cook note was described in the notice of sale as follows:

> (1) Term Promissory Note of Randolph B. Cook, M.D. dated
> May 2, 2002, in the face amount of $120,669.98, payable to
> Harold H. Allen, M.D., in sixty equal monthly installments of
> $2,318.89, including interest on the unpaid balance at 5.75%.
> Debtor's former spouse is entitled, pursuant to a property
> settlement agreement, to 72% of the value of the note.  The
> petition date principal balance due on the note was $103,788.00
> The portion attributable to the estate is thus $29,060.77.

At the time the trustee gave notice of the proposed sale, the debtor was holding six checks,

each in the amount of $649.29, drawn by the Center and payable to the debtor, dated

September 20, November 4, December 1, and December 30, 2004, and January 31 and

March 1, 2005.  There seems to be no dispute that the checks were tendered in payment of

installments owed to the debtor on the Cook note.[1]  The record does not disclose why the

---

[1] The record is silent as to Dr. Cook's exact relationship to the Center.  The court notes that
the amount of each check equates to 28% of the required monthly payment of $2,318.89,
which would be consistent with the debtor's representation that the remaining 72% was
owed to his wife.

debtor had not cashed or deposited the checks.  The trustee testified that he was aware of the uncashed checks at the time he noticed the sale of the promissory note.

In any event, objections were filed to the proposed sale, and ultimately an order was entered on April 5, 2005, approving a sale to Dr. Cook instead for $43,000.00 in immediate cash.  The description of the Cook note in the order approving the sale was identical with the description in the notice to sell, except that the reference to the "petition date principal balance" was deleted and replaced by the statement, "[t]he March 1, 2005 principal balance due on the note was $56,539.55," and the statement as to the "portion attributable to the estate" was deleted.   The order, like the notice of sale, was silent with respect to the Center's uncashed checks.  The debtor turned the checks over to the trustee on or about May 19, 2005, and the trustee deposited them on May 25, 2005.  Sometime in the interim, the Center issued a stop payment order with respect to the checks, which were returned unpaid by the drawee bank on or about June 1, 2005.  The trustee then commenced the present action against the Center to recover the amount of the checks.

<u>Conclusions of Law and Discussion</u>

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  Venue is proper in this district under 28 U.S.C. § 1409(a).  The defendant has been properly served and has appeared generally.

The complaint alleges, and the answer admits, that the present action is a core proceeding under 28 U.S.C. § 157(b).  The court concurs that where, as here, the checks

3

appear to relate to payments that became due, and the checks were tendered, after the date of

the bankruptcy filing, an action to recover the amount of those checks is a core proceeding.

The court does observe, however, that if the payment obligation were treated as arising

prepetition, an action to collect such a debt is not a proceeding for turnover — which under

28 U.S.C. § 157(b)(2)(E) would be a core proceeding — but (at least to the extent that

liability is disputed) a non-core, related matter.  *See Humbolt Express, Inc. v. The Wise Co.,*

*Inc. (In re Apex Express Corp).*, 190 F.3d 624 (4th Cir. 1999) (holding that action by debtor to

collect prepetition accounts receivable from non-creditor customer is non-core).

However, even if the present action should ultimately be held to be non-core, this court

is not thereby deprived of jurisdiction.  A bankruptcy judge may conduct the trial in a non-

core proceeding.  28 U.S.C. § 157(c)(1).  The fact that a proceeding is non-core simply

means that the bankruptcy judge cannot enter the final judgment but must submit proposed

findings of fact and conclusions of law to the district court.  *Id.*  Even in a non-core

proceeding, however, a bankruptcy judge may enter a final judgment if the parties consent.

28 U.S.C. § 157(c)(2).  The allegation by the plaintiff, and the corresponding admission by

the defendant, that this is a core proceeding is the functional equivalent of consent to entry

of a final judgment by a bankruptcy judge.  *See McLean Square Assocs. v. J. W. Fortune, Inc.*

*(In re McLean Square Assocs.),* 200 B.R. 128 (E.D. Va. 1996), *aff'd* 107 F.3d 866 (4th Cir.

1997) (holding that party who fails to object to bankruptcy court's jurisdiction in non-core

related matter until after entry of final order has impliedly consented to the court's power).

Additionally, the final pretrial order in this action is endorsed by counsel for both parties

under the statement, "We acknowledge receipt of a copy of the Pretrial Order *and certify that*

4

*we consent to the jurisdiction of this court.*" (emphasis added). Accordingly, this court has jurisdiction to enter a final judgment regardless of whether this action is or is not a core proceeding.

II.

The trustee, as the representative of the bankruptcy estate, succeeds to the debtor's rights as the payee of the checks. The drawer of a check that is dishonored by the drawee bank is obligated to pay the holder of the check according to its terms at the time it was issued. Va. Code Ann. § 8.3A-414(b).[2] The payee's right to enforce the obligation, however, is subject to certain defenses. Va. Code Ann. § 8.3A-305(a). The only such defense that arguably applies in this case is "a defense . . . that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract." Va. Code Ann. § 8.3A-305(a)(2). In essence, the Center asserts that it has no obligation to pay the checks because the trustee, in selling the promissory note, was also selling the bankruptcy estate's interest in the uncashed checks that had previously been tendered by the Center (presumably at Dr. Cook's direction) as payments on the note.

The trustee disclaims any such intent or understanding. Certainly, there is nothing in either the notice of sale or the order approving the sale that specifically refers to the uncashed checks. Nor is there any suggestion that the issue was raised at the hearing on

---

[2] It is true that the maker of a check has a right, *vis-a-vis* the bank on which the check is drawn, to stop payment. Va. Code Ann. § 8.4-403. However, the maker's right to stop payment does not affect its liability to the payee or to subsequent holders of the dishonored check. *See First Fed. S & L Assn. of S.C. v. Chrysler Credit Corp.*, 981 F.2d 127 (4th Cir. 1992) (holding that maker that stopped payment on five checks was liable to depository bank that gave credit on them even though the bank was not a holder in due course).

approval of the sale or was otherwise discussed between the parties.  The court can therefore

only go by the plain language of the sale order.  That order approved the sale of the note,

which was described in relation to its principal balance "as of March 1, 2005."  In the

absence of evidence to the contrary, the court must assume that the principal balance stated

was the balance remaining after the application of all payments that had been made up

through the date stated, which includes the six checks at issue.  Thus, the court concludes

that the right to those six payments remained with the bankruptcy estate, just as surely as if

the checks had been cashed and were being held the debtor's bank account at the time of the

sale.  No other defense to payment having been suggested, the court concludes that the

trustee is entitled to judgment against the Center for the amount of the dishonored checks.

A separate judgment will be entered consistent with this opinion.


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

Gregory Counts, Esquire
Tyler, Bartl, Gorman & Ramsdell
700 S. Washington Street, Suite 216
Alexandria, VA  22314
Counsel for the plaintff

A. Hugo Blankingship, III, Esquire
Blankingship & Associates, PC
516 ½ Oronoco Street
Alexandria, VA  22314
Counsel for the defendant